BC

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

RECEIVED
8/22/2026
MPV
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

KENNETH DEL SIGNORE,

*Plaintiff,*

v.

ILLINOIS STATE BOARD OF ELECTIONS (IL-SBOE),

*Defendant.*

Case No.: ______________

1:26-cv-10167
Judge Charles P. Kocoras
Magistrate Judge Jeannice W. Appenteng
Random/Cat. 2

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

I. INTRODUCTION

1. Plaintiff brings this action to safeguard the fundamental right to a secret ballot and to ensure the integrity of Federal elections in Illinois.
2. The current Vote-by-Mail (VBM) processing sequence utilized by the IL-SBOE and its member counties creates a structural vulnerability that allows for the "de-anonymization" of ballots. By maintaining the sequential order of envelope scans and ballot scans, the ballots can be de-anonymized by simply sequentially matching the records. Therefore the state is failing to preserve the confidentiality required by the Help America Vote Act (HAVA) and the U.S. Constitution.
3. Furthermore, Plaintiffs seek discovery to investigate the potential use of exfiltrated voter data for illicit targeted advertising and the possible padding of ballots with ineligible registered voters.

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

## II. PARTIES AND STANDING

4. Plaintiff Ken Del Signore is a registered voter in Kane County, Illinois, whose right to a secret ballot is directly threatened by current processing protocols.

5. John Ellesson, candidate for the U.S. House of Representatives representing IL-9 and is filing an amicus brief concurrently with the Plaintiff's Complaint.

6. Congressional Standing: As candidate for federal office, this individual has a unique and concrete interest in the legality and fairness of the election process. The threat of illicit micro-targeting and vote padding based on compromised ballot data constitutes a "particularized injury" to their campaign and the electors they seek to represent.

## III. JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 1331 (Federal Question) and 42 U.S.C. § 1983 (Civil Rights).

8. Venue is proper under 28 U.S.C. § 1391(b) as the Defendant resides in this district and the events giving rise to the claim occurred here.

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

## IV. STATEMENT OF FACTS

9. Ballot De-anonymization: In many Illinois counties, vote by mail (VBM) ballots are processed through (1) an envelope scanner, (2) an opener/sorter, and (3) a high-speed scanner[1]. Because ballots are often scanned in the same sequential order as the envelopes, each voter's identity can be matched to their Cast Vote Record (CVR).

9a. Plaintiff petitioned the IL-SBOE in Dec. 2025 for the relief of shuffling the ballots and was denied[2].

10. Security Vulnerabilities: Evidence from the Tina Peters case in CO. suggests that Dominion election management servers are configured with legacy security holes, potentially allowing unauthorized access to both the scanned envelope data and CVR records. The purpose of this access is alleged to not be to change vote totals on election night[3], but rather to allow a remote bad actor to access the data sometime after the election and download it in order to de-anonymize the ballots.

---

1 https://www.kanecountyil.gov/Lists/Events/Attachments/6253/Election%20Security%20Presentation.pdf pg. 11

2 Exhibit JJJ

3 which would be a very complex operation involving simultaneously accessing up to 2500 US County election servers

11. Illicit Targeted Advertising: The use of targeted advertising is described in the 2023 House Subcommittee report as capable of increasing targeted voter's turnout by 10% in a general election[4]. Plaintiff alleges that high turnout discrepancies (2:1 vote by mail advantage for the DNC) may be the result of "illicit micro-targeting." If bad actors obtain de-anonymized ballot data, they can target ads to specific individuals with knowledge of how they voted (or didn't vote) in previous cycles in order to increase turnout of a party's base voters.

12. Vote Padding: Statistical analysis is given in the appendices that indicate large numbers of ineligible voters are being registered to vote in Illinois through the 1993 DMV motor voter law. These populations of people can be grouped into a "never-voter" category by virtue of their never having cast a ballot in any election. Discrepancies in "never voter" rates in Cook County, suggest the potential for large-scale ballot padding using these ineligible registered voters.

V. CAUSES OF ACTION

- Count I: Violation of HAVA (52 U.S.C. § 21081). Failure to preserve the confidentiality of the ballot.
- Count II: Violation of the 14th Amendment, Deprivation of Equal Protection of Illinois State Constitutional right to a secret ballot.

[4] Exhibit AAA

- Count III: Violation of the 1st Amendment. Chilling of political speech through illicit micro-targeting and surveillance of voting behavior.

VI. REQUESTED RELIEF

Plaintiffs respectfully request that this Court:

1. Mandatory Shuffling: Order the IL-SBOE to implement a mandatory "physical shuffle" of all VBM ballots prior to scanning to break the sequential link between voter identity and ballot record.

2. Under Seal Discovery (Targeted Ads): Grant a subpoena against Meta/Facebook to grant token privileges to the Plaintiff in order to access to the the "Vote Yes for Fairness" account data[5], specifically to identify user populations of targeted ads run in 2020, to check for precinct-level defects indicative of illicit data exfiltration.

3. SAVE Database Access: Order the IL-SBOE to provide Plaintiff access to the State of Illinois SAVE database API interface to scrub for ineligible registered voters in Cook County, Chicago, and collar Counties. The results would not even have to be unsealed; by demonstrating the ability to detect the illicit

[5] through the Facebook political ad database that is described in Exhibit CCC.

activities described herein, the bad actors should be greatly dissuaded from repeating the activity in future elections.

4. Allow Plaintiff to conduct Court sanctioned discovery of ineligible registered voters using the National Public Database[6]. This alternative discovery path is available and could be utilized at the Court's prerogative.

Respectfully Submitted,

*s/* Ken Del Signore, 22 July, 2026

pro se

Table of Exhibits:

| | |
|---|---|
| **ZZZ** | Diagram of vote by mail ballot processing system and potential for de-anonymization |
| **AAA** | 2023 draft House Committee report on the End Zuckerbucks Act |
| **BBB** | 2020 ten percent relative increase in DNC turnout, but only in some states |

[6] As described in Exhibit JJJ

| | |
|---|---|
| **CCC** | 2020 Kane and Lake County FOIA responses show a statistically significant difference in vote by mail response rates of 95% and 85%, which could be explained by targeted advertising + differing percentages of precincts de-anonymized within each County. |
| **DDD** | 2020 Colorado cast vote records in one, and only one, County shows a temporal trend that can be explained by targeted advertising to one party's base. |
| **EEE** | 2026 imbalance between R and D voters on the USPS National Change of Address database in seven NE Counties in Illinois, but not elsewhere in the State, nor anywhere in Ohio, indicating that names could be being removed from the USPS NCOA list prior to publication in order to keep desired voters (that have moved) registered in their original jurisdiction, to which they can still be enticed to submit a vote by mail ballot. |
| **FFF** | 2020 Colorado Dominion election server, 1990s era security flaw documented by the Tina Peters case. |
| **GGG** | Never voter rates by City, County for Illinois compared to Ohio |
| **HHH** | Hispanic/North American surname aggregation analysis of never-voter rates |
| **III** | Anomalous Chicago Board of Elections turnout data |
| **JJJ** | Use of National Public Database to scrub for ineligible registered voters |
| **KKK** | Denial from IL-SBOE of Complaint seeking shuffling of vbm ballots |

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS,

EASTERN DIVISION

ZZZ

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

ZZZ Diagram of typical vote by mail ballot processing sequence. De-anonymization is a trivial exercise of matching the rows between the two datasets (as shown).



IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

**AAA**

**AAA** The 2021 EndZuckerbuck Act did not produce a published subCommittee report, but the 2023 version of the bill did produce a draft and a final report[7]. These reports appear to have been written in 2021, immediately following the 2020 election. The Majority View section gives a detailed list of states that had increased relative turnout on the order to 10%, as shown in exhibit BBB.

In the Minority View section of the *draft* report, links are given to non-profits and consulting firms which detail the ability to increase voter turnout by 10 % in a general election through the use of online targeted ads. Why would the DNC reveal the technical details of how they had just won the 2020 election in a draft subcommittee report, but then remove that information from the final version of the report? The Plaintiff speculates that some force caused the winning political party to reveal their technical secrets.


H. Rept. 118-509 (PDF 377KB)

CRPT-118hrpt509.pdf 54 / 57 175%

funded by that impoverished jurisdiction's tax revenue—will usually have fewer voting locations, worse communication to voters, and fewer staff members."[7] With the onset of the pandemic, and the extreme costs associated with running an election during a

[1] *2021 Grant Expenditure Report: October 1, 2020–September 30, 2021,* ELEC. ASSIST. COMM. (July 2022), at https://www.eac.gov/sites/default/files/paymentgrants/expenditures/EAC_2021_Grant_Expenditure_Report_FINAL.pdf.
[2] *Id.*
[3] *Id.*
[4] *Guidance on Meeting Match in CARES Act Grants under HAVA,* ELECTION ASSISTANCE COMM'N (Mar. 31, 2023), https://www.eac.gov/grants/guidance-meeting-match-cares-act-grants-under-hava.
[5] *Quarterly Report to the Pandemic Response Accountability Committee,* ELECTION ASSISTANCE COMM'N (Jul. 10, 2023), https://www.eac.gov/sites/default/files/2023 07/15011_Quarterly_Report_on_CARES_Funding_Due_July_10_2023.pdf.
[6] *Final Report on 2020 COVID–19 Response Grant Program and CTCL 990s,* CTR. FOR TECH & CIVIC LIFE (Dec. 15, 2021), https://www.techandciviclife.org/2020covidsupport/ [hereinafter CTCL Final Report].
[7] *Id.*

(53)

[7] draft committee report: https://www.congress.gov/committee-report/118th-congress/house-report/509/1?outputFormat=pdf
final committee report with footnotes in minority view removed: https://www.congress.gov/committee-report/118th-congress/house-report/892/1?outputFormat=pdf

footnote 6 above leads to a non-profit "Center for tech. and Civil Life. Their website leads to consulting firms that specialize in online targeted advertising. Data from one such consulting firm, ActiVote, shows an 11% improvement in voter turnout in presidential elections. This data was online in 2023, therefore we can assume that it refers to the 2020 Presidential election.



IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS,

EASTERN DIVISION

**BBB**

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**BBB**

**10% increase in DNC turnout in larger states in 2020 vs 2016,** as documented in the draft 2023 House Committee Report on the End Zuckerbucks Act (final drafts each year do not link to micro targeting data).

Lines are fit to data with x < 1,000,000. RNC and DNC lines have similar slope. Larger RNC states with x>1,000,000 all lie on the line. Larger DNC states are mostly to the right of the line, indicating ~10% greater turnout relative to the RNC in those states. Only 2 out of 18 DNC states are above the line with X> 1,000,000, similar to flipping a quarter 18 times and getting 16 heads. Probability of getting 16 heads on 18 tries is 1 in 1700.

Data below is taken from Wikipedia.






IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS,

EASTERN DIVISION

**CCC**

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Exhibit CCC**

2020 Kane and Lake County FOIA responses show a statistically significant difference in vote by mail response rates of 95% and 83%, which could be explained by targeted advertising + differing percentages of precincts that have been successfully de-anonymized within each County.

Lake County reports 169,392 vote by mail ballots distributed and 140,723 returned, for an 83% response rate.

**Thelen, Daniel** <DThelen@lakecountyil.gov> Fri, Jun 28, 2024 at 4:27 PM
To: Ken Del Signore <kendelsignore@gmail.com>

Hi Ken,

We did not send a Vote by Mail ballot to any voters that did not submit an application to receive a Vote by Mail ballot. At the time, the only ways to request a Vote by Mail ballot were completing a signed paper application or making a request through our website. There was a law passed specifically for the 2020 General Election that required election jurisdictions to mail an application to voters who had voted in select recent elections (2018 General Election, 2019 Consolidated Election, and 2020 General Primary Election), but not a ballot. I will say that it would not be unusual for our office to have a higher rate of 18 to ~25 year olds requesting Vote by Mail ballots compared to voters who are a few years older, as that age range has a significant number of college (or postgraduate) students who are away at school but consider their Lake County address their residence.

I also have the numbers for you, we sent out 169,392 Vote by Mail ballots and 140,723 were returned.

[Quoted text hidden]

In Kane County, using data from John Emmerson's 2022 FOIA response, we have that Kane Coulty sent out 80K vbm ballots and received 76K in response, for a 95% response rate:







This data indicates that some factor caused vote by mail voters in Kane County to return their vbm ballots at a 95% rate and only 83% in Lake County. These are out of sample sizes of 80K and 140K respectively.

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

Facebook political ads are archived beginning in 2019 and can be searched via an API interface:




These show that an Illinois PAC was running a large number of ads to entice voters to mail in their vbm application, and then ballots:

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

Example of returned data. Ads can be viewed directly through the web browser api interface or the metadata can be accumulated in a text file.

Below left, the text file shows an example of meta data for one ad. Ads were searched for state=Illinois, search term = "ballot" and date = 6/1/2020 ->11/3/2020. Txt file is approx 8M lines. 80% of the adds are for out of state candidates but that have at least one impression in Illinois. These have to be filtered out.


```
    {
        "page_name": "Vote Yes For Fairness",
        "bylines": "Vote Yes for Fairness",
        "ad_creation_time": "2020-07-29",
        "ad_delivery_start_time": "2020-07-30",
        "ad_delivery_stop_time": "2020-08-10",
        "estimated_audience_size": {
            "lower_bound": "10001",
            "upper_bound": "50000"
        },
        "impressions": {
            "lower_bound": "50000",
            "upper_bound": "59999"
        },
        "spend": {
            "lower_bound": "700",
            "upper_bound": "799"
        },
        "ad_creative_bodies": [
            "All registered Illinois voters are eligible to Vote b
y Mail in this election! Click to see how you can join the tens of tho
usands of Illinoisans who\u2019ve already signed up to receive a ballo
t."
        ],
        "delivery_by_region": [
            {
                "percentage": "1",
                "region": "Illinois"
            }
        ],
        "id": "1947372262062640"
    },
-:**-  test_il-ballot_2020.6_11.txt   83% L5657206  (Text)
```








The "Vote Yes for Fairness PAC" was heavily advertising in the summer of 2020 to entice people to return their vbm application.

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

In 2020, the sequence was: Covid -> Zuckerbucks VBM systems installed in 200 Counties -> landslide VBM win for the DNC in *some* states




In Illinois, emergency covid legislation was passed to mail a vbm ballot application to every voter that had voted since 2018 on July 1st.

We can ask if any PACs were encouraging people to request a VBM ballot in July or Aug of 2020?

Vote Yes for Fairness has 20x more such ads than next closest PAC

| | state | day | PAC | |
|---|---|---|---|---|
| region_impressions_per_day | Illinois | 219 | | |
| region_impressions_per_day | Illinois | 219 | Vote Yes for Fairness-Vote Yes For Fairness | 198264 |
| region_impressions_per_day | Illinois | 219 | When We All Vote-When We All Vote | 7411 |
| region_impressions_per_day | Illinois | 219 | TEAM GRAHAM, INC.-Lindsey Graham | 6751 |
| region_impressions_per_day | Illinois | 219 | FRIENDS OF CHERI BUSTOS-Cheri Bustos | 5828 |
| region_impressions_per_day | Illinois | 219 | BIDEN VICTORY FUND-Joe Biden | 5653 |
| region_impressions_per_day | Illinois | 219 | MOVEON.ORG POLITICAL ACTION-MoveOn | 5630 |
| region_impressions_per_day | Illinois | 219 | AMERICANS FOR PROSPERITY ACTION, INC.(AFP ACTION)-No Unfair Tax | 5000 |
| region_impressions_per_day | Illinois | 219 | Vote Yes for Fair Tax-Vote Yes for Fair Tax | 3834 |
| region_impressions_per_day | Illinois | 219 | Spence for State's Attorney-Bob Spence for State's Attorney | 2666 |
| region_impressions_per_day | Illinois | 219 | Citizens for Karina Villa-Citizens for Karina Villa | 2431 |

As can be seen in the figure below, Lake and Kane are collar Counties to Cook County and the City of Chicago.

**Congressional Districts of Northeastern Illinois**



IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

The Plaintiff contends that a plausible explanation for why the vote by mail response rate was over 10 percent different in these two very similar collar Counties is that different amounts of social media targeted ads were served to each County. The differences could be explained by differing percentages of precincts that have had their ballots de-anonymized.

With a single subpoena to Facebook for token level access to the “Vote Yes for Fairness” ad campaign, the targeted lists of individuals can be extracted and cross matched to their County and precinct. Due to the de-anonymization process working at the precinct level, it is likely the case that not all precincts were de-anonymized, and this would show up as missing precincts in the list of voters receiving targeted political ads. Additionally, the targeted voter’s street address can be used to make a scatterplot and compared to the same scatterplot made with the total list of registered voters. If precincts are missing from the targeted lists, then there will be outlines of the missing precinct in a scatterplot made as below.




**DDD**

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Exhibit DDD** 2020 Colorado cast vote records in one, and only one, County shows a temporal trend that could be explained by targeted advertising to one party's base. In this case, Denver County shows a decline the the percentage of D votes over the two week mail in period for vbm ballots. Colorado is a 100% vbm State. Targeted advertising could have caused D votes to be more likely to return their ballot sooner, in this single County.



IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS,

EASTERN DIVISION

**EEE**

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Exhibit EEE**

2026 imbalance between R and D voters on the USPS National Change of Address database in seven NE Counties in Illinois, but not elsewhere in the State, nor anywhere in Ohio, indicating that names could be being removed from the USPS National Change of Address (NCOA) list prior to publication in order to keep desired voters (that have moved) registered in their original jurisdiction, to which they can still be enticed to submit a vote by mail ballot.

There is a deficit of D voters observed in Chicago BOE, Cook, and surrounding counties in the NCOA list. If ballot confidentiality is compromised, then a bad actor could use the expert knowledge of voter preferences to illicitly modify the USPS NCOA list by removing D voters from the list in order to allow them to vote by mail in subsequent elections. .

| | C | D | E | F | G | H | J | K |
|---|---|---|---|---|---|---|---|---|
| 1 | | | 9/25 state db, active+inactive, all R/D primary ballots cast, excluding 10/25 NCOA SUIDs | 9/25 state db, only NCOA SUIDs, Active+ inactive, all R/D primary ballots cast | | Predicted number of DEM ballots | | Deficit DEM ballots (column H - F) |
| 2 | Chicago BOE | | | | | | | |
| 3 | Chicago BOE | REPUBLICAN | 309661 | 14488 | | | | |
| 4 | Chicago BOE | DEMOCRATIC | 3984158 | 139600 | | 186405 | | 46805 |
| 5 | Cook | | | | | | | |
| 6 | Cook | REPUBLICAN | 1039016 | 68146 | | | | |
| 7 | Cook | DEMOCRATIC | 2551998 | 116364 | | 167378 | | 51014 |
| 8 | Dupage | | | | | | | |
| 9 | Dupage | REPUBLICAN | 934957 | 56923 | | | | |
| 10 | Dupage | DEMOCRATIC | 663047 | 28856 | | 40368 | | 11512 |
| 11 | Lake | | | | | | | |
| 12 | Lake | REPUBLICAN | 446668 | 27939 | | | | |
| 13 | Lake | DEMOCRATIC | 498603 | 22437 | | 31188 | | 8751 |
| 14 | Will | | | | | | | |
| 15 | Will | REPUBLICAN | 388157 | 22921 | | | | |
| 16 | Will | DEMOCRATIC | 395378 | 16795 | | 23347 | | 6552 |
| 17 | Kane | | | | | | | |
| 18 | Kane | REPUBLICAN | 317590 | 13288 | | | | |
| 19 | Kane | DEMOCRATIC | 241249 | 7000 | | 10094 | | 3094 |
| 20 | McHenry | | | | | | | |
| 21 | McHenry | REPUBLICAN | 305682 | 14873 | | | | |
| 22 | McHenry | DEMOCRATIC | 149053 | 5347 | | 7252 | | 1905 |
| 23 | Madison | | | | | | | |
| 24 | Madison | REPUBLICAN | 168686 | 5280 | | | | |
| 25 | Madison | DEMOCRATIC | 211824 | 5557 | | 6630 | | 1073 |
| 26 | Saline | | | | | | | |



IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**EEE**



IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**EEE**

Cook and Chicago BOE include eight congressional districts

Purpose of building a DB of 100K out of state voters is likely for the congressional races. Illinois is deep blue and a bad actor would not need to illicitly modify the NCOA list to add 100K votes in the presidential race.

Similar analysis of Ohio shows no imbalance across 88 counties:



IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS,

EASTERN DIVISION

**FFF**

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Exhibit FFF** 2020 Mesa Co. Colorado Dominion election server contains an obvious security flaw that would allow exfiltration of data. Telnet is a remote access protocol developed in the 1970s for Darpanet. Telnet is known to be insecure and is not included with Microsoft Server 16, which was the OS running the Dominion Election Management Software Suite. This is the Desktop server that Tina Peters had a disk image made of. The disk image revealed that a telnet server had been installed on the machine and was running with the default windows passwords: administrator/password. In the media, it was reported that Tina Peters released Dominion's passwords online.

Microsoft does make its telnet server available for download for legacy compatibility and it appears that Dominion installed it as part of their election software suite. The Plaintiff contends that the act of installing a telnet server on a central election management server is an open admission of guilt.

Dominion software is in ~30% of all US counties. Legacy unsecure telnet server is downloaded and installed with ***default login credentials unchanged***. Microsoft has not updated it's telnet server since 2012.


Mesa-EMS-Server-Image-Forensic-Report-No-1-09-15-21.pdf 11 / 85 100%

FORENSIC ANALYSIS

SYSTEM IDENTIFICATION

The server that was analyzed is capable of operating on a small local area network (LAN). The network consists of several systems, including servers and workstations running in a non-virtualized environment. The server that we evaluated was named EMSSERVER. It is running the Microsoft Windows Server 2016 Standard operating system.

The forensic evaluation and reviews were based upon a forensic image archive collected from the Mesa County Dominion EMS Server. The Before and After forensic images were collected from the same server and same hard drive, as documented below, from the actual acquisition. The serial number of the hard drive shown in each collection data set verifies the data origin to be the same physical device.

**Figure 1 – EMS Server (5.11-CO) Image Attributes Before**


Figure 25 - Retrieved Vote Totals ....................
Figure 26 - Candidate number for Trump modified ....................
Figure 27 - Candidate number for Biden modified....................
Figure 28 - Vote totals retrieved again after modification....................
Figure 29 - Accessing port 1433 with Telnet ....................
Figure 30 - The EMS server network interface appears to answer a connection to port 1433....................
Figure 31 - EMS server has the 'Windows Firewall' enabled ....................
Figure 32 - Windows Firewall Custom SQL entry is enabled....................



IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS,

EASTERN DIVISION

**GGG**

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Exhibit GGG**

Never voter rates by City for Illinois compared to Ohio. Ohio conducts annual audits of its voter rolls to remove ineligible registered voters[8]. The Plaintiff argues that this causes the lower rate of "never-voters" in Ohio versus Illinois as shown below. The contention is that ineligible registered voters do not vote and produce the elevated rates, and that these rates vary by locality based on concentration of ineligible registered voters present.

It should be noted that there are many citizens that are never-voters also, therefore the percentages below are an admixture of the two populations for each locality.







[8] https://www.ohiosos.gov/office/media-center/categories/press-releases/2024-08-01

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS,

EASTERN DIVISION

**HHH**

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**HHH** Hispanic/North American surname aggregation analysis of never-voter rates

By aggregating all last names in the state voter history DB, we can hand select the most commonly occurring names by ethnicity into two group, labeled, *HISPANIC and *NAMERICA.

```
--- last_name
0       last_name       SMITH                                   65747
0       last_name       JOHNSON                                 63251
0       last_name       WILLIAMS                                50978
0       last_name       JONES                                   41646
0       last_name       BROWN                                   40260
0       last_name       MILLER                                  34373
0       last_name       DAVIS                                   32288
0       last_name       ANDERSON                                26489
0       last_name       GARCIA                                  26827
0       last_name       RODRIGUEZ                               25940
0       last_name       JACKSON                                 24130
0       last_name       PATEL                                   24808
0       last_name       THOMAS                                  22796
0       last_name       WILSON                                  22458
0       last_name       MARTINEZ                                23225
0       last_name       MOORE                                   21548
0       last_name       TAYLOR                                  21365
0       last_name       HERNANDEZ                               22356
0       last_name       HARRIS                                  20818
```

This allows approx 10% and 5% of the names to be aggregated into the two groups as shown below and allows for statistical analysis of changes in registration rates over time.

```
--- lastname                            8718630

--- lastname
0       lastname        *NAMERICA                       1048202
0       lastname        *HISPANIC                        429962
0       lastname        PATEL                             20976
0       lastname        COLEMAN                            7825
0       lastname        HOWARD                             7752
0       lastname        COOK                               7698
0       lastname        PARKER                             7666
0       lastname        SULLIVAN                           7552
0       lastname        MEYER                              7385
0       lastname        WARD                               7378
0       lastname        WASHINGTON                         7286
0       lastname        COX                                7194
0       lastname        KIM                                7187
```

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

The data below is made from Illinois voter database files from Sept 2024 to June 2026. Each month's data is filtered for registration IDs that are not present in the preceding month. This allows a measure of the new registrations per month in the state of Illinois[9].

This data can be used to estimate that approx 1 in 3 new registrations in the *hispanic category below are to ineligible voters in the State of Illinois. If we assume the increased number of new registrations in Oct and Nov of 2024 are dominated by eligible voters that are intending to vote in the 2024 Presidential election, then the true ratio of *hispanic to *namerica voters is given below as .59.

We then assume that all of the following months, the new registrations are dominated by DMV registrations and note that the ratio is .83 for these months. This implies that for every 100 *namerica registrations, there are 83 *hispanic registrations, where 59 would be to eligible voters and 24 to ineligible voters, yielding an estimate of 1 in 3.5 (24/83) *hispanic registrations are to ineligible voters for the time period Dec 24-> Jun 26.

| | June 26 -> Dec 24 | 11/24 + 10/24 |
|---|---|---|
| --- *hispanic | 55985 | 12922 |
| --- *namerica | 67189 | 21737 |
| ratio | 0.83 | 0.59 |




9 Other analysis also indicates registration IDs are sometimes dropped for one or more months and then reappear in the data for unknown reasons. These are observed in the tens to hundreds per month and would be captured in the data above based on the simple filtering algorithm.

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS,

EASTERN DIVISION

**III**

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Exhibit III**

- scatterplot of precinct level turnout for any County shows a sharp upper edge
- suspect two components
  - some fraction of people that never vote, like being left handed.
  - TIN registered illegal aliens that do not vote and may not even know they are registered to vote
- Ohio provides a clean baseline because they have an annual scrub of their voter registration roles to remove TIN registered people.







The scatterplot for the Chicago Board of Elections (CBOE) does not have a never-voter gap in its distribution, which could be a signature of large scale ballot padding.












The CBOE is the only jurisdiction observed to not have a gap. Similar distributions are seen in Michigan and Ohio. The Plaintiff notes that data for Fulton County Georgia is not available on the County's web site and could not be examined.

With Court ordered access to the SAVE database, the Plaintiff could conduct an under seal survey of ballots cast in previous CBOE elections to examine for the presence of ballots cast by ineligible state voter IDs.

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS,

EASTERN DIVISION

**Exhibit JJJ**

**JJJ** An alternative to the use of the SAVE database to accomplish the proposed scrub of ineligible registered voters is the National Public Database. The NPD consists of PII information for every person in the US over the age of 18 in 2022[10]. Specifically, the SSNs or TINs, as shown:

> They also mentioned the data contains first and last names, addresses and SSNs, all of which appear in the first file above (among other fields):

```
1 ID,firstname,lastname,middlename,name_suff,dob,address,city,county_name,st,zip,phone1,ak
2 1,AU [redacted] ,,,,,,,574182899
3 2,AU [redacted] ,,,,,,,,574182899
4 3,AU [redacted] 4,,,,,,,,,574182899
5 4,JU [redacted] ,574182899
6 5,JU [redacted] ,,574182899
7 6,JU [redacted] ,,,,574182899
```

This data is readily available on the internet, but it is prohibited to access this data, potentially subjecting someone to criminal prosecution for accessing PII information of others[11].

With the Court's leave, the proposed under seal analysis would be to download the NPD database and perform the voter scrub as described herein. There would not be 100% match on the names and addresses, but if there is large-scale registration of persons that are ineligible to vote, this could be discerned with the remaining percentage of state voter IDs that can be uniquely matched[12].

---

[10] https://www.troyhunt.com/inside-the-3-billion-people-national-public-data-breach/
[11] There is however currently a commercial website that uses this data https://haveibeenpwned.com/Breach/NationalPublicData
[12] which can be expected to be > 50%

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS,

EASTERN DIVISION

**KKK**

STATE OF ILLINOIS )
) SS
COUNTY OF COOK )

**BEFORE THE STATE BOARD OF ELECTIONS**
**OF THE STATE OF ILLINOIS**

**In the Matter of:**

Ken Del Signore, )
Complainant, )
)
v. ) Board File#: 2025 HAVA 1
)
John Cunningham, Kane County Clerk, )
Respondent. )

**FINAL DISMISSAL ORDER**

This matter was heard the 18th day of February, 2025, pursuant to 26 Ill. Adm. Code 150.30, on the Complaint filed by Complainant Ken Del Signore alleging violations of Title III of the Help America Vote Act, 52 U.S.C. § 21081 ("Title III of HAVA") and 10 ILCS 5/17-16, 19-8, and 24A-10. The Board having reviewed the Deputy General Counsel Determination Following Preliminary Review of Complaint Pursuant to 26 Ill. Adm. Code 150.30(a)(1), and hearing the recommendation of the Deputy General Counsel, and now being fully advised in the premises,

THE BOARD FINDS:

1. On December 19, 2025, Complainant emailed to the Board a copy of the notarized HAVA Complaint;
2. The original, notarized HAVA Complaint was received at the Board's Chicago office on or about December 20, 2025, with no indication of service upon Respondent;
3. The Complaint alleges Respondent violated Title III of HAVA (52 USC 21081(a)(1)(C) and Sections 17-16, 19-8, and 24A-10 of the Election Code, 10 ILCS 5/17-16, 19-8, and 24A-10 through use of vote by mail envelope processing machines in combination with a ballot scanner/tabulator;
4. On February 5, 2026, the Deputy General Counsel Determination Following Preliminary Review of Complaint Pursuant to 26 Ill. Adm. Code 150.30(a)(1), recommending dismissal of the HAVA Complaint, dismissal of alleged violations of Sections 17-16, 19-8, and 24A-10, and informal referral of the envelope scanning and processing procedures to the Board's Voting Systems Testing Division, was served upon Complainant and Respondent; and
5. On February 19, 2026, Complainant emailed the General Counsel advising he would attend the February 19, 2026, Meeting of the Board; and
6. At the Board meeting on February 19, 2026, Complainant did not appear, Respondent did not appear, and Complainant's emailed statement was read into the record.

THE BOARD CONCLUDES:

1. The findings, conclusions, and recommendations in the Deputy General Counsel Recommendation as expressed are adopted;
2. The HAVA Complaint does not state sufficient facts as to constitute a cause of action under 52 USC 21081(a)(1)(C); and
3. The HAVA Complaint does not state sufficient facts as to constitute a cause of action under 10 ILCS 5/17-16, 19-8, or 24A-10.

IT IS ORDERED:

1. The HAVA Complaint is dismissed;
2. The allegations regarding 10 ILCS 5/17-16, 19-8, and 24A-10 are dismissed;
3. A member of Board staff will discuss vote by mail processing procedures with Respondent to ensure the anonymity of vote by mail ballots are preserved;
4. The effective date of this order is February 23, 2026;
5. Pursuant to 26 Ill. Adm. Code 150.40(c), a copy of this order shall be posted on the Board's website; and
6. This is a final order subject to review under the Administrative Review Law (735 ILCS 5/3-101 *et seq*.) and 26 Ill. Adm. Code 150.40.

Dated: February 23, 2026

Laura K. Donahue
Chair
Illinois State Board of Elections

**STATE OF ILLINOIS**
**COUNTY OF COOK**

**BEFORE THE STATE BOARD OF ELECTIONS**
**OF THE STATE OF ILLINOIS**

**IN THE MATTER OF:**

| | | |
|---|---|---|
| Ken Del Signore,<br>Complainant, | ) | |
| v. | ) | 25 HAVA 001 |
| Kane County Clerk, John Cunningham,<br>Respondent. | ) | |

**REPORT OF DEPUTY GENERAL COUNSEL**

On December 19, 2025, the Board received a complaint alleging a violation of Section 21081 of the Help America Vote Act as well as three distinct Sections of the Illinois Election Code. The General Counsel recommends that the complaint be received as one made pursuant to Title 402 of the Help America Vote Act ("HAVA") and; therefore, proceed under the Administrative Rules adopted to govern such complaints.

The General Counsel delegated review of the complaint and reporting to the undersigned Deputy General Counsel.

## I. Summary of the Complaint

The complaint[1] alleges that John Cunningham, in his official capacity of Kane County Clerk, is violating 1 Section of HAVA and 3 Sections of the Election Code through the continued, combined use of three machines: two vote by mail processors (presumably the Relia-Vote system identified in a footnote of the complaint) and the jurisdiction's high speed ballot tabulator/scanner. Per the complaint, the Relia-Vote is an envelope scanner, opener, and sorter; and, through its use, voter names and signatures are allegedly recorded and sorted by precinct. The complaint alleges this recording can be utilized with a 1-to-1 comparison against the ballot scanner/tabulator(s) to identify an individual voter's ballot.

Complainant alleges this practice violates 52 USC § 21081. Though Complainant does not specify which subparagraph of Section 21081 he claims is violated, Complainant quotes Subsection (a)(1)(C), which states in its entirety: "[t]he voting system shall ensure that any notification required under this paragraph preserves the privacy of the voter and the confidentiality of the ballot."

[1] Attached hereto as Exhibit A.

As to the State law, Complainant alleges Kane County's three-machine vote by mail processing system violates the following Sections of the Election Code: 17-16, governing the method for processing irregular marking of ballots, official endorsement, "defective" and "objected to" ballots, and spoiled ballots; 19-8, governing the method for the time and place of counting vote by mail ballots; and 24A-10, governing the method for receiving, tallying, and return of ballots; and acceptance of ballots by the election authority.

As to relief, Complainant requests the Board find that Kane County cannot ensure ballot confidentiality; determine that Kane County is violating Sections 17-16, 19-8, and 24A-10 of the Election Code; and order Kane County to shuffle vote by mail ballots so they cannot be identified to a specific voter.

## II. Summary of Illinois' Administrative Procedures for HAVA Complaints

Section 402 of HAVA affords "...any person who believes that there is a violation of any provision of [Title] III [of HAVA][2]" the right to file a HAVA complaint. (52 USC §21112(a)(2)(B)). Illinois' administrative procedures have been adopted as administrative rules in Title 26, Part 150 of Illinois' Administrative Code.

If a complaint meets threshold form requirements[3], the General Counsel is tasked with conducting a Preliminary Review (detailed in Section III that follows), which can result in three possible outcomes:

(1) The HAVA complaint states a valid claim and proceeds to hearing, if the Complainant requested a hearing, or is assigned to a hearing examiner to make a recommendation based solely on the complaint, any evidence submitted with the complaint, and any response offered by the respondent as to whether the complaint is sufficiently grounded in fact and law;

(2) Summary dismissal with no further action if the complaint fails the preliminary review; or

(3) As an alternative to summary dismissal of the complaint, the Board may determine that the complaint alleges a violation of the Election Code and refer it to the appropriate division of the Board, election authority, or law enforcement agency for investigation.

*See* 26 Ill. Adm. Code §150.30(a)-(c).

## III. Preliminary Review Under Administrative Rule Section 150.30(a)

Section 150.30(a)(1) requires that the General Counsel, upon the filing of a complaint, perform a preliminary review to determine whether the complaint meets three requirements to constitute

[2] Broadly, Title III of HAVA sets voting system standards, establishes provisional voting requirements, establishes the statewide voter registration list requirements, and establishes federal mail registration.

[3] 26 Ill. Adm. Code §150.20.

a valid complaint under HAVA[4]. 26 Ill. Adm. Code §150.30(a). Please allow this report to memorialize that review. The Sections that follow correspond with the elements of Subsections of §150.30(a)(1) required for a complaint to be deemed valid.

A. The complaint alleges a violation under Title III of the HAVA

The complaint satisfies this element, as the complaint specifically alleges Respondent's machinery and processes violate 52 USC § 21081, which is part of Title III of HAVA. Complainant quotes this Section in part as "The voting system shall … preserve the privacy of the voter and the confidentiality of the ballot." (Compl. P. 1)

B. The complaint pertains to a federal election

The complaint satisfies this element as it alleges a "continuing violation" occurring in "every election in which the [identified equipment] is used" since 2020. (Compl. P. 1)

C. The complaint states sufficient facts as to constitute a cause of action under the Act for which the Board can grant appropriate relief.

I have reviewed the complaint and am of the opinion that it does not satisfy this element, which, in this context, requires that the complaint allege facts and circumstances that violate the identified provision of Title III of HAVA.

Though Complainant does not specify which subparagraph of Section 21081 he claims is violated, Complainant partially quotes Subsection (a)(1)(C) thereof, which states in its entirety: "[t]he voting system shall ensure that any notification required under this paragraph preserves the privacy of the voter and the confidentiality of the ballot." The notifications referenced are the over vote[5] notifications required under 52 USC § 21081(a)(1)(A)(iii)[6]. The complaint is devoid of alleged facts regarding any voter notifications (overvote or otherwise) as the processes identified relate only to the interaction between the machinery processing vote by mail ballot envelopes and processing marked ballots – both of which the individual voter does not interact with.

Therefore, I recommend this complaint under HAVA be determined to be invalid and dismissed under 26 Ill. Adm. Code § 150.30(a).

**IV. Election Code Violations**

For the reasons that follow, the complaint also fails to allege facts, circumstances, or processes that warrant a formal referral to a division of the Board, to an election authority, or to law

[4] 26 Ill. Adm. Code § 150(a)(1).

[5] if a voter selects more than the number of candidates allowed for a particular office – e.g. more than 1 candidate for US Senator or more than 2 candidates for county board member.

[6] Voting systems are required to notify voters when they have over voted an office; are required to allow voters to correct that over vote; and to make that correction before the ballot is cast and counted.

enforcement for investigation as contemplated as an alternative to summary dismissal in §150.30(a)(2). Please allow this Section to address the alleged violations of the Election Code.

A. 10 ILCS 5/17-16. Complainant cites to this Section's requirement that "ballots shall be folded or arranged so that votes are secret." (Compl., p. 1) While this Section does require that defective or otherwise spoiled ballots be placed in envelopes as part of the statutory procedure for processing defective and otherwise spoiled ballots, this Section does not address the processing of vote by mail ballots or the tabulation of ballots. The complaint does not allege any processes which reference the procedures governed by this Section or any violation thereof.

   Similarly, in my opinion, no reasonable inference from the processes described in the complaint can rise to a violation of the procedures detailed by this provision of the Election Code. As such, I recommend no action be taken with regard to this allegation.

B. 10 ILCS 5/19-8. This Section of the Code provides the method by which vote by mail ballots are to be processed, voters verified, and votes counted. It also provides the procedures for rejecting a vote by mail ballot. The complaint is devoid of specific facts that establish a violation of these procedures. In my opinion, no reasonable inference from the processes alleged in the complaint can rise to a violation of the procedures detailed by this provision of the Election Code.

   At best, the 1-to-1 comparison alleged between the envelope processing machine(s) and the ballot tabulation machine(s) is speculative because the complaint does not identify any detailed actions which establish that Complainant's speculated voter ballot identification would actually occur. Which is to say the Complainant does not identify any processes used by Kane County where the scanned envelope information is actually or reasonably viewed simultaneously with the scanned ballots as they are processed through the tabulator. Therefore, I do not recommend the SBE take formal action or find a violation here. However, I do recommend that a member of the Division of Voting and Registration Systems' Testing team connect with Kane County to discuss procedural enhancements that could eliminate any perceived risk of identifying or connecting a marked ballot to an individual voter.

C. 10 ILCS 5/24A-10. Similar to the Sections addressed above, the complaint does not allege facts or defects in Kane County's vote by mail processes that are governed by the procedures of Section 24A-10. Section 24A-10 details the methods by which election jurisdictions are to receive, store, transport, and tally votes cast. Even under the most generous of interpretations, the machinery identified in the complaint and the processes those machines are used in as described in the complaint are outside the scope of those contemplated by Section 24A-10. As such, I do not recommend any further action be taken by the Board or Board staff with regard to this alleged violation.

## V. Notice

Under §150.30(a)(2), a copy of this recommendation and Notice of the date and time of these Board proceedings have been provided to the Complainant and Respondent. Complainant will be afforded an opportunity to appear before the Board on the noticed date and show cause as to why the complaint should not be dismissed.

## VI. Conclusion

For the reasons stated above, I recommend that the complaint be dismissed for failure to state sufficient facts as to constitute an action under the Help America Vote Act. I further recommend finding that the allegations of violations of the Election Code, Sections 17-16, 19-18, and 24A-10, be dismissed for failure to state a claim thereunder. Accordingly, the complaint may be summarily dismissed.

I recommend that no further action be taken with regard to this complaint, save for an informal discussion between SBE staff and Kane County staff to ensure that best practices are being utilized in the processing and sorting of vote by mail ballots to ensure the privacy of the ballot.

Jordan Andrew — Deputy General Counsel
February 5, 2026

**Illinois State Board of Elections**
**COMPLAINT FOR VIOLATION OF THE ELECTION CODE**
(26 Ill. Admin. Code § 125.252)

**Complainant**
Ken Del Signore
1509 Patterson Avenue
North Aurora, IL 60542
Phone: (630) 346-2993
Email: kendelsignore@gmail.com

**Respondent**
John Cunningham, in his official capacity as
Kane County Clerk
719 S. Batavia Avenue, Bldg. B
Geneva, IL 60134

**Date of Violation**
Continuing violation – the unlawful practice occurs in every election in which the 2020 CTCL-funded vote-by-mail processing equipment is used.

**Statutes Violated**

HAVA (52 U.S.C. § 21081) 301 (a)(1)(A)(iii) (The voting system shall … preserve the privacy of the voter and the confidentiality of the ballot.)
10 ILCS 5/17-16 (ballots shall be folded or arranged so that votes are secret)
10 ILCS 5/19-8 (vote-by-mail ballot processing must preserve secrecy of the ballot)
10 ILCS 5/24A-10 (electronic voting systems must protect voter privacy and ballot secrecy)

**Narrative of Violation**

Since 2020, Kane County has used a high-speed vote-by-mail processing system purchased with approximately $2 million in Center for Tech and Civic Life (CTCL) grants[1]. The system consists of three primary machines[2] that operate in the following sequence:

1 An envelope scanner that records voter names and signatures in exact sequential order.

2 An envelope opener/sorter that extracts ballots and sorts them by precinct (297 precincts in Kane County).

---

[1]https://www.bluecrestinc.com/resources/case-studies/kane-county-makes-sure-every-vote-counts-with-relia-vote/
[2] https://www.kanecountyil.gov/Lists/Events/Attachments/6253/Election%20Security%20Presentation.pdf

3 A high-speed ballot scanner that scans and tabulates the ballots in the exact same order in which the envelopes were originally scanned.

This sequential processing creates a one-to-one correlation between voter identity (recorded by the envelope scanner) and the voted ballot (recorded by the ballot scanner). If any backdoors exist on these systems that would allow the raw ballot images to be exfiltrated, then the ballots can be de-anonymized after the fact by simply matching the two sequential image logs.

Exfiltration could occur after the election by many means, such as subsequent connection to the internet, on-site technician visit, software update, power-line data transmission, or an embedded cellular chipset — possibilities that Kane County's own security presentations do not rule out (p.40 scanning machine not connected to the internet).

Kane County currently performs no physical shuffling or randomization of ballots within each precinct stack before final tabulation. A simple, zero-cost, zero-delay remedy exists: manually or mechanically shuffle the ballots in each precinct batch before feeding them into the ballot scanner. This single step breaks the sequential link and renders any potential de-anonymization impossible while complying fully with Illinois law requiring ballot secrecy.

Despite being made aware of this vulnerability through direct correspondence in 2024–2025, the Kane County Clerk has not responded to the Complainant with any information about any planned change in procedures.. Therefore the continued use of sequential scanning constitutes an ongoing violation of the statutory duty to preserve ballot secrecy in every election conducted in Kane County.

The vulnerability I describe is not unique to Kane County. At least 25 other Illinois counties received identical or substantially similar high-speed CTCL-funded processing equipment in 2020. Sequential scanning without randomization appears to be the default procedure in many jurisdictions.

**Relief Requested**

That the State Board of Elections: Find that the Kane County Clerk cannot ensure ballot confidentiality using its current procedures and therefore could be violating 10 ILCS 5/17-16, 5/19-8, and 5/24A-10;

Order the Kane County Clerk to immediately implement physical shuffling (manual or mechanical) of vote-by-mail ballots, within each precinct batch or otherwise, prior to final scanning in all future elections;

Grant such other relief as the Board deems just.

**Verification**

I, Ken Del Signore, declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct to the best of my knowledge and belief.Executed on December 15, 2025
/s/ Ken Del Signore

**Notarized:**
Sign your legal name exactly as it appears on the Notary Stamp.
Affix your Notary Stamp. Ensure the commission expiration date is current.
Write the commission date next to the seal.

State of Illinois, County of Kane, signed and attested before me on

19th of December, 2025 (date) by

Ken DelSignore (name of person who signed above

(seal)

"OFFICIAL SEAL"
MELISSA JO HUBBUCH
Notary Public, State of Illinois
Commission No. 998590
My Commission Expires October 16, 2028

Melissa Jo Hubbuch

(signature of Notary)

Attachments

Exhibit A – Microtargeting Consulting firms and information disclosed in the first 2024 House Subcommittee Report on the End Zuckerbucks Act.

Appendix A Analysis of information disclosed in 2024 House Subcommittee Report on the End Zuckerbucks Act.

In May of 2024, a House Subcommittee released a report on the proposed End ZuckerBucks Act. This report contains a "Minority view" section, that contains many valuable links related to state of the art online electioneering regimes that have been recently developed. In Dec 2024, the report was reissued and the information in the minority response section was removed[34].

The Minority view section of the first report cites the website of the Center for TECH AND CIVIC LIFE. The CTCL annual report[5] details the work of the Activote consulting firm which specializes in increasing voter turnout on an individual (i.e. micro-targeted) basis. According to Activote's website, they have developed targeted social media campaigns that can target a list of voters and produce increased voter turnout in the targeted group. The Activote website claims that it can increase a targeted voter's probability of voting in a primary or consolidated election by 15-30%[6] as shown below:




[3] https://www.congress.gov/committee-report/118th-congress/house-report/509
[4] https://www.congress.gov/committee-report/118th-congress/house-report/892/1
[5] https://www.techandciviclife.org/wp-content/uploads/2024/05/2023-Annual-Report-CTCL-for-web.pdf
[6] https://www.activote.net/activotes-2023-impact-report/

This means that, given a list of voters, Activote can target the group through social media ads, and that they have prior election data which indicates the targeted group's voter turnout rate will increase by 15-30%, depending on election type.

Given this ability to target voters, the next question is, how would a political candidate, or a consulting firm that they are paying, know ***which*** voters to target?

The best way to do so would be to examine the specific votes that each voter has cast in previous elections. The Plaintiff believes that this is the likely primary goal of the ZuckerBucks program[7]; to allow one political party access to the raw votes that each voter has cast in previous elections.

The anecdotal evidence supports the claim that ballot confidentiality has already been broken prior to 2020; namely the statistically significant increase in turnout in Democrat States in the 2020 elections documented in the House report.

If the in person electronic voting systems have been compromised, then there may be statistical evidence left in the County level turnout data. If the ballot data + micro-targeting were used to increase DNC turnout in 2020, then there should be statistical differences in turnout in Counties with hacked systems versus those without.

A second piece of anecdotal evidence comes from the 83.7% vote for Kamala Harris in the city of Chicago in the 2024 presidential election. Rural Counties often have high historic rates of voting for the RNC. These Counties have a fixed population that tends to do the same thing in each election. However in Chicago, the population has a high amount of transient professional individuals in the age range 20-40, as seen in the data below.

[7] Rather than to keep us safe from covid as we were originally told. We can also note that the ~200 Zuckerbucks systems that were installed in the most populous counties in 15 swing states in the summer of 2020 must have required several 10's of installation teams working in parallel to install such a high number of systems in a three month timeframe. This is inconsistent with an emergency response and suggests pre-planning.




Chicago data shows 2X more voters in the 25-45 range vs other counties.

The deleted and new data show that there is a migration pattern of working age people in and out of the city

If these people are drawn randomly from a 50/50 sample of R to D, then the vote in Chicago would be drawn closer to 50/50

In 2024, chicago voter 84% Dem, this stretches the bounds of statistical probability if the transient voters are voting at 50/50.







A typical County age distribution is shown below using Cook County. The difference between the CBOE data and the Cook County distributions is consistent with population pyramids of other US cities.

Comparing the upper left distribution with distribution below, we can estimate that approximately 25% of the population of Chicago has moved to the City from somewhere else. But this population should be randomly drawn from a near 50/50 sample of voters. So in order to get an 83.7% vote for the DNC, the remaining 75% of residents in the city would have to vote at near 100% in favor of the DNC.




Young voters have a lower turnout rate, as shown in the age distributions shown below. The data above shows the age distribution of all voters and the data below shows the age distribution of all voters that cast a ballot in the 2020 GE.

One way that an 84% vote could have been generated is if microtargeting were done on young voters whose previous ballots had been compromised. As can be seen by comparing the total age distribution to the voted age distribution, only about 60% of voters in the 20-40 y/o range cast a ballot in the 2020 GE. If some large portion of this group of voter's previous ballots have been compromised by the in-person electronic systems, then only the DNC favorable voters could have been micro-targeted to increase turnout in this age range and produce the observed election results.

Age of voter casting ballot in 2020 GE,

y= number of ballots cast, x = age of voter, jurisdiction 16, 105 = Cook County, CBOE.




105 = CBOE



West's Illinois Administrative Code
Title 26. Elections
Chapter I. State Board of Elections
Part 150. Administrative Complaint Procedures for Violations of Title III of Hava (Refs & Annos)

26 Ill. Adm. Code 150.30

150.30 Preliminary Review of Complaint

Currentness

a) Preliminary Review

1) Upon the filing of a complaint, the General Counsel shall perform a preliminary review to determine whether the complaint meets the following requirements to constitute a valid complaint under the Act.

A) The complaint alleges a violation under Title III of the Act;

B) The complaint pertains to a federal election; and

C) The complaint states sufficient facts as to constitute a cause of action under the Act for which the Board can grant appropriate relief.

2) If the General Counsel determines that the complaint meets the criteria listed in subsection (a)(1) for a valid complaint under the Act, then the complaint shall proceed under subsections (b) and (c). If the General Counsel determines that the complaint has not met the listed criteria for a valid complaint under the Act, the complaint shall be presented to the Board for a final determination of its status. In addition, the complainant shall be notified in writing of the General Counsel's determination of the complaint's invalidity and be given an opportunity to appear before the Board to show cause as to why the complaint should not be dismissed. The decision of the Board as to the status of the complaint shall be in the form of a final order subject to appeal under the Illinois Administrative Review Law [735 ILCS 5/Art. III], within the parameters of Sections 9-22, 10-10.01 and 17-33 of the Election Code. As an alternative to summary dismissal of the complaint, the Board may determine that the complaint alleges a violation of the Election Code and refer it for investigation to the appropriate division of the Board or to the appropriate election authority or law enforcement agency.

b) After a determination by the General Counsel that the complaint meets the criteria set out in subsection (a), and upon the written request of the complainant, the Board shall appoint a hearing examiner to conduct a hearing. This hearing shall be held to determine whether the complaint is sufficiently grounded in fact and law. The request must be a part of or accompany the complaint when filed. Following the hearing, the hearing examiner shall make a written recommendation as to whether the complaint is sufficiently grounded in fact and law, and a copy of the recommendation shall be given to the General Counsel for his or her recommendation and to both parties to the complaint. Upon receipt of the recommendation of the hearing examiner and the General Counsel, the Board shall make a final determination as to the merits of the complaint and shall make a decision as to what, if any, action should be taken as a result of the complaint. The final determination and decision shall be in the form of

a final order subject to appeal under the Illinois Administrative Review Law, within the parameters of Sections 9-22, 10-10.01 and 17-33 of the Election Code.

c) Should the complainant fail to request a hearing, the Board shall appoint a hearing examiner to make a recommendation based solely on the complaint, any evidence submitted with the complaint, and any response offered by the respondent as to whether the complaint is sufficiently grounded in fact and law. The hearing examiner shall allow the respondent an opportunity for a hearing to present evidence supporting any offered defense (both documentary and/or testimonial) prior to the hearing examiner submitting the recommendation to the General Counsel. The complainant shall be given notice and an opportunity to be present and participate in the hearing; however, failure of the complainant to appear at the hearing shall not factor into the hearing examiner's recommendation as to whether the complaint is sufficiently grounded in fact and law. After considering all evidence presented by the parties, the hearing examiner shall prepare a written recommendation to be given to the General Counsel for his or her recommendation and to the parties to the complaint. Upon receipt of the recommendation of the hearing examiner and the General Counsel, the Board shall make a final determination as to the merits of the complaint and shall make a decision as to what, if any, action should be taken as a result of the complaint. The final determination and decision shall be in the form of a final order subject to appeal under the Illinois Administrative Review Law, within the parameters of Sections 9-22, 10-10.01 and 17-33 of the Election Code.

d) The proceedings of the hearing shall be recorded either by a certified court reporter or by means of an electronic recording device. Any party may provide for his or her own recording of the proceedings of the hearing utilizing a court reporter or any other recording device. Any associated costs, however, shall be borne by the party providing for the recording.

e) The Board shall render a final determination of the matters alleged in the complaint within 90 days after the filing of the complaint. The time period may be extended by a written waiver of the complainant. If the Board fails to render a final determination with respect to the complaint by the end of the 90 day period and no such waiver is provided by the complainant, the Board shall order the matter to be resolved by an alternative dispute resolution mechanism described in Section 150.145.

**Credits**

(Source: Amended at 40 Ill. Reg. 1953, effective January 5, 2016)

Current through rules published in the Illinois Register Volume 49, Issue 52, December 26, 2025. Some sections may be more current, see credits for details.

26 ILAC § 150.30, 26 IL ADC 150.30

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Gmail

**Ken Del Signore <kendelsignore@gmail.com>**

# 25 HAVA 001 - Notice and Recommendation

5 messages

**GeneralCounsel** <GeneralCounsel@elections.il.gov> Thu, Feb 5, 2026 at 3:39 PM
To: "kendelsignore@gmail.com" <kendelsignore@gmail.com>, "countyclerk@kanecountyil.gov" <countyclerk@kanecountyil.gov>

Good Afternoon.

Attached please find Notice of Hearing and the Recommendation of the General Counsel regarding a complaint under Section 402 of the Help America Vote Act, received by the State Board of Elections on December 19, 2025. A copy of the same has been mailed to both parties via USPS mail.

This matter will appear before the Board on Wednesday, February 18. Both parties are welcome to appear before the Board at that time.

Thank you.

Best Wishes –

Jordan Andrew (she/her)

Deputy General Counsel

Illinois State Board of Elections

**2 attachments**

**25HAVA1 - Notice of Hearing.pdf**
153K

**GC Recommendation.25 HAVA 001.exhibits.pdf**
766K

**Ken Del Signore** <kendelsignore@gmail.com> Fri, Feb 6, 2026 at 9:58 AM
To: GeneralCounsel <GeneralCounsel@elections.il.gov>

Hello Jordan,

Based on your response in paragraph 10, I do not believe you have understood my allegations.
In particular in section IV para B, you state that the Complainant does not identify any scenario where the ballots can be viewed simultaneously. I am not alleging that anything illicit is occurring on election night or on the County premises.
The scenario I am aledging is that sometime after each election, all of the scanned images are illicitly exported off of the machines to an unknown server, where a bad actor can "view the envelope and ballot data simultaneously" and would be

able to match the names on the envelope images with the ballot images. Any reasonable juror can be made to understand this gaping security hole in these vbm systems.

In summary, my argument is that Kane County cannot guarantee that the raw images are not being exfiltrated from their machine after each election and therefore an order is needed to shuffle the ballots prior to final scanning to ensure that ballot confidentiality is maintained.
Best
Ken Del Signore
630 346 2993
PS can I have a short call with you? It would be immensely helpful for me to understand this situation.
[Quoted text hidden]

---

**Ken Del Signore** <kendelsignore@gmail.com> Wed, Feb 18, 2026 at 8:39 AM
To: GeneralCounsel <GeneralCounsel@elections.il.gov>, Brenda Schory <bschory@shawmedia.com>
Cc: "countyclerk@kanecountyil.gov" <countyclerk@kanecountyil.gov>

Hello Good People,
I thought that the meeting would be by zoom and did not become aware that it was not on zoom until last night. I have an existing hearing at 9:00 am in Kane County that I must attend.
If the Board could simply enter my response text into the record, I think htat would suffice to convey the information I would like the Board to base a final decision on.

My Response: The General Council did not reply to my allegations, but rather to some scenario that was not alleged. Any reasonable juror can see that Kane County cannot guarantee that the ballot information is secure and therefore a bad actor could exfiltrate the data and de-anonymize the ballots.

I thank the ILSBOE for their time. Please issue a final ruling in this matter so the process can advance to a Courtroom.

Thanks
Ken Del Signore

On Thu, Feb 5, 2026 at 3:40 PM GeneralCounsel <GeneralCounsel@elections.il.gov> wrote:
[Quoted text hidden]

---

**Ken Del Signore** <kendelsignore@gmail.com> Wed, Feb 18, 2026 at 4:37 PM
To: GeneralCounsel <GeneralCounsel@elections.il.gov>

Hello,
can you tell me whether my statement was entered into the record? And/or what the resolution was? I thought the hearing was by zoom until the night before. I would have driven in but I had a hearing in Kane County at 9:00 am.
I will next be taking this matter to a petition to the ILSC and 7th Circuit.
Thanks
Ken D.
[Quoted text hidden]

---

**GeneralCounsel** <GeneralCounsel@elections.il.gov> Tue, Feb 24, 2026 at 1:50 PM
To: Ken Del Signore <kendelsignore@gmail.com>, GeneralCounsel <GeneralCounsel@elections.il.gov>

Good Afternoon, Mr. Del Signore.

Attached please find the Order reflecting the Board's action regarding this complaint. A copy of the same was mailed to you via USPS yesterday. As you will see, your email was read into the record.

[Quoted text hidden]

---

**25HAVA1 - Dismissal order.pdf**
200K